AURORA ASSOCIATES,
INC., Appellant,

v.

Marshall A. BYKOFSKY, Appellee.

Marshall A. Bykofsky, Cross–Appellant,

v.

Aurora Associates, Inc., Cross–Appellee.

Nos. 96–CV–1777, 97–CV–25.

District of Columbia Court of Appeals.

Argued March 2, 1999.

Decided April 6, 2000.

James P. Sullivan, Rockville, MD, for appellant and cross-appellee Aurora Associates, Inc.

Jeffrey Harris, with whom Walter E. Diercks and Darrin N. Sacks, Washington, DC, were on the brief, for appellee and cross-appellant, Marshall A. Bykofsky.

Before STEADMAN and REID, Associate Judges, and KING, Senior Judge.

REID, Associate Judge:

This matter involves a dispute between appellant/cross-appellee Aurora Associ-

ates, Inc. ("Aurora"),[1] a District of Columbia corporation specializing in government consulting contracts, and appellee/cross-appellant Marshall A. Bykofsky, a former employee, officer and shareholder of Aurora. After his termination as an employee of Aurora, Bykofsky filed a seven count complaint against Aurora and two of its officers. Aurora filed three counterclaims against Bykofsky.[2] During a jury trial on the complaint and counterclaims, the trial judge directed a verdict for Bykofsky, as to the principal, on his claim for 1978 deferred compensation, and Aurora's counterclaim relating to conversion of a negotiable instrument. The jury returned a split verdict on the remaining claims and counterclaims.[3] The trial judge initially issued an order setting aside two of the jury's awards: (1) $15,000 in punitive damages to Bykofsky for conversion of personal property (count 6); and (2) $10,000 in punitive damages to Aurora for conversion of the Mercedes (counterclaim 1). Aurora then moved for judgment notwithstanding the verdict, or in the alternative, for a new trial. Bykofsky filed a motion to alter or amend the judgment. Before ruling on these motions, the trial court entered an amended judgment reinstating both the awards of punitive damages—$15,000 to Bykofsky as to count 6 and $10,000 to Aurora as to counterclaim 1. Subsequently, the trial court denied Aurora and Bykofsky's post-trial motions. Both Aurora and Bykofsky noticed appeals.

In their respective appeals, Aurora and Bykofsky challenge the post-trial rulings of the trial court. Aurora asserts that the trial court committed error by denying its motions for judgment notwithstanding the verdict and, in the alternative for a new trial, as they concerned the awards to Bykofsky based on the promissory note, the deferred compensation, the Aurora stock, and punitive damages for conversion of personal property. Aurora also assigns error with respect to the directed verdict in favor of Bykofsky on its conversion of negotiable instrument (check) and fraud and misrepresentation counterclaims. Bykofsky contends that the trial court erred by denying his motion to alter or amend judgment as to the promissory note,[4] and

1. Aurora was incorporated in 1978 by Bykofsky, Robert Walker, and James Statman. In addition to Aurora, Bykofsky filed his complaint against Walker and Statman.

2. Bykofsky alleged: (1) breach of the duty of good faith and fair dealing resulting from his termination and inability to gain access to his office; (2) public policy tort based on his termination due to his refusal to submit inaccurate and false time sheets and a false certification of Aurora as a minority contractor; (3) money owed based on 1978 deferred compensation and interest; (4) money owed based on 1979 (to the present) deferred compensation and interest; (5) failure to pay an $80,000 promissory note; (6) conversion of personal property; and (7) intentional interference with his employment relationship with Aurora. As counterclaims, Aurora asserted: (1) conversion of a Mercedes automobile; (2) conversion of a negotiable instrument (a check in the amount of $17,914); and (3) fraud and misrepresentation.

3. The jury returned a verdict for Aurora on: (1) count 1 relating to breach of the duty of good faith and fair dealing; and (2) count 2 pertaining to the public policy tort; and for defendant Walker, an officer of Aurora, on count 7 concerning intentional interference with Bykofsky's employment relationship. The trial court directed a verdict for Statman during trial. A verdict in behalf of Bykofsky was rendered as to: (1) count 3, the 1978 deferred compensation (approximately $54,-533) (the trial court had directed a verdict for Bykofsky regarding principal but left it to the jury to determine the amount of interest to accompany the principal); (2) count 4, post–1978 deferred compensation ($50,000); (3) count 5 relating to the $80,000 promissory note ($27,000 awarded); count 6, conversion of personal property ($15,000 in punitive damages). The jury also awarded Aurora $10,000 in punitive damages with respect to its counterclaim regarding the Mercedes; and rendered a special finding that Bykofsky owned twenty-three shares of Aurora stock.

4. Bykofsky also contends that the trial court erred by vacating the jury's award of punitive damages to him on the conversion count (count 6) of his complaint. In making this argument, Bykofsky overlooked the fact that after initially vacating the award of punitive damages for conversion of personal property, the court reinstated the jury award, and thus,

the punitive damages awarded to Aurora for conversion of personal property.

Since the jury did not award compensatory damages either to Aurora or Bykofsky with regard to their respective conversion of personal property claim (count 6) and counterclaim (counterclaim 1), and because we see no basis in the record for awards of actual damages, we reverse the trial court's reinstatement of the awards of punitive damages. In all other respects we affirm the judgment of the trial court.

## FACTUAL SUMMARY

The record on appeal shows the following facts. In 1978, Aurora hired Bykofsky, initially as a contract employee, to provide legal services. Soon he became a full-time employee of the corporation, and was designated project director for one of Aurora's government contracts. An employment contract was executed on March 3, 1979. A duly executed agreement, signed on March 13, 1978, provided that Bykofsky would receive an additional sum of $16,250 as deferred compensation for the period of March 13, 1978 through September 30, 1978, payable within five years from September 30, 1978. The 1986 minutes of Aurora's Board of Directors show that the obligation to pay Bykofsky the 1978 deferred compensation, and the deferred compensation for subsequent years, was reaffirmed. In addition, Aurora's deferred compensation obligations to Bykofsky and others were reflected each year on the corporation's tax returns and its financial statements.

Under its articles of incorporation, Aurora was authorized to issue one hundred shares of common stock. The initial shareholders were Robert Walker, James Statman, and Donald Abel. When Abel surrendered his twenty-one shares of stock

in 1981, in exchange for $1,500, Bykofsky purchased the shares for $1,500. His ownership of Aurora stock is evidenced by a 1981 financial statement prepared by an accounting firm; the testimony of Aurora's Directors; the shareholders' minutes for the years 1986 through 1991; and Aurora's stock record book. Furthermore, Aurora's federal corporation tax returns for the period of 1985 through 1993, as well as Aurora's 1993 Citibank application for a loan, show that there was a realignment of Aurora's stock ownership, giving Bykofsky twenty-three shares, compared with fifty-one for Walker and twenty-six for Statman.

With respect to the management of the corporation, Bykofsky assumed more responsibility when he was appointed Executive Vice President for Finance and Administration in 1981, a position which he held until his termination on June 21, 1994. During his tenure, Aurora experienced financial problems and, periodically, was unable to pay the salaries of its officers and employees. As a result of its financial difficulties, Aurora became indebted to Bykofsky for work he performed in 1985, 1992, 1993, and 1994. This indebtedness appeared in Aurora's financial statements and its tax returns.

Aurora's financial situation did not improve. In 1989, Aurora discovered a problem with its 1987 financial records. The indirect rates on its government contracts were paid at a lower rate than billed, thus leaving a shortfall in funds to be paid to the corporate officers. The sum of $250,-000 was needed to cure the problem. In 1989, Bykofsky drafted three $80,000 promissory notes, each designed as a "bonus" to the three corporate officers, for a total of $240,000. The corporate minutes, prepared belatedly for July 1987, stated that: "As the current cash flow situation of

he prevailed in the trial court on this issue. Nonetheless, since Aurora argues that the trial court's reinstatement of the punitive damages as to count 6 of the complaint was error, we read the section of Bykofsky's brief on punitive damages as a response to Aurora's

argument against the award of those damages to him. Similarly, we read his argument regarding the punitive damages reinstated in Aurora's behalf as opposing reinstatement rather than supporting the trial court's initial order vacating the award.

the company makes it impossible for the bonus to be paid at this time, it is to be recorded as deferred compensation and is to be paid as specified in the attached [promissory] Notes." The principal due on each note was $80,000, and the interest was to be paid in accordance with a schedule attached to the promissory note. Aurora made payments on the notes to Bykofsky and the others on December 7, 1992 ($5,500) and December 6, 1993 ($7,500). In 1994, Bykofsky and the two other corporate officers demanded full payment of the remaining sums due under their respective promissory notes. However, a government audit of contracts awarded to Aurora initially disallowed the $240,000 earmarked for bonus money, but an appeal allowed $120,000 of that sum to be used for bonuses.

Partly due to its financial problems, relationships within Aurora began to fall apart and disputes broke out. Disagreements surfaced concerning the authorization and distribution of Aurora stock. In addition, accusations of impropriety were made by one employee or officer against another regarding, *inter alia,* failure to complete time sheets, and misrepresentations as to Aurora's minority contractor status. In 1994, Bykofsky was accused of improperly making out a $17,000 check to himself. Furthermore, there were disagreements concerning guarantors for Aurora's line of credit. The corporate disputes and tensions resulted in Bykofsky's termination, and charges by Bykofsky that he was "locked out" of his office, and unable to retrieve his personal property, including his stock certificate. Eventually he left the corporation. After his departure, Aurora accused Bykofsky of converting the company automobile for his own personal use, and forcing it to incur costs for a replacement vehicle and for repossession of the converted car.

## ANALYSIS

▆ Aurora and Bykofsky both argue that the trial court committed error by denying their post-trial motions—motions notwithstanding the verdict, for a new trial, and to alter or amend judgment. "A judgment notwithstanding the verdict of the jury is appropriate only where 'no reasonable person, viewing the evidence in the light most favorable to the prevailing party, could reach a verdict in favor of that party.'" *Durphy v. Kaiser Found. Health Plan,* 698 A.2d 459, 465 (D.C.1997) (quoting *Lyons v. Barrazotto,* 667 A.2d 314, 320 (D.C.1995) (quoting *Oxendine v. Merrell Dow Pharm., Inc.,* 506 A.2d 1100, 1103 (D.C.1986))) (citing *District of Columbia v. Cooper,* 445 A.2d 652, 655 (D.C.1982) (en banc) (other citation omitted)). Moreover, "[w]hen the case turns on disputed factual issues and credibility determinations, the case is for the jury to decide." *Id.* (citing *Lyons, supra,* 667 A.2d at 320 (other citations omitted)). " 'If reasonable persons might differ, the issue should be submitted to the jury.'" *Id.* (quoting *Lyons, supra,* 667 A.2d at 320 (citation omitted)). Furthermore, "[i]n reviewing a motion for judgment as a matter of law after a jury verdict, this court applies the same standard as the trial court." *Id.* (citing *Oxendine, supra,* 506 A.2d at 1103). " '[W]e review the denial of ... a motion [for judgment after trial] deferentially.'" *United Mine Workers of America, Int'l Union v. Moore,* 717 A.2d 332, 337 (D.C. 1998) (quoting *Daka, Inc. v. Breiner,* 711 A.2d 86, 96 (D.C.1998) (other citation omitted)).

▆ "The decision whether to grant or deny a motion to alter or amend judgment ... lies within the broad discretion of the trial court." *Wallace v. Warehouse Employees Union,* 482 A.2d 801, 810 (D.C. 1984) (citations omitted). Similarly, " '[t]he trial court has broad latitude in passing upon a motion for a new trial,' and we review the disposition of such motion only for abuse of discretion." *United Mine Workers of America, Int'l Union, supra,* 717 A.2d at 337 (quoting *Gebremdhin v. Avis Rent–A–Car Sys., Inc.,* 689 A.2d 1202, 1204 (D.C.1997)). "To grant a

motion for a new trial, the trial court must find that the verdict is against the weight of the evidence, or that there would be a miscarriage of justice if the verdict is allowed to stand." *Id.*

 Aurora also contends that the trial court erred in directing a verdict in Bykofsky's behalf on the 1978 deferred compensation count (count 3), with respect to the principal sum of $16,250. "In reviewing a motion for a directed verdict, this court must view the evidence in the light most favorable to the non-moving party." *Osbourne v. Capital City Mortg. Corp.*, 727 A.2d 322, 324 (D.C.1999) (citing *Abebe v. Benitez*, 667 A.2d 834, 836 (D.C. 1995) (other citations omitted)). Moreover, "[a] directed verdict is ... only appropriate where the evidence is so clear that reasonable persons could reach but one conclusion." *Id.* (citing *Bauman v. Sragow*, 308 A.2d 243, 244 (D.C.1973) (other citation omitted)).

*The Punitive Damages Awards*

The jury did not award compensatory damages either to Bykofsky regarding his claim of conversion of personal property (count 6), or to Aurora concerning its counterclaim of conversion of a Mercedes automobile (counterclaim 1).[5] However, the jury did award punitive damages to Bykofsky ($15,000) and to Aurora ($10,000). Aurora argues that the trial court erred by failing to enter a judgment notwithstanding the verdict for compensatory damages on its counterclaim since it incurred attorneys fees and related expenses ($1,708) in repossessing the Mercedes, as well as costs for a replacement car ($850). Bykofsky contends that the jury determined that Aurora was not entitled to compensatory damages on its counterclaim, and further, that Aurora is not entitled to additur. As

to his own award of punitive damages on count 6, Bykofsky maintains that, under *Dyer v. William S. Bergman & Assocs., Inc.*, 657 A.2d 1132 (D.C.1995), compensatory damages are not required to sustain punitive damages. Further, he contends, the award of twenty-three shares of Aurora stock supports the punitive damages. Aurora disagrees, citing *Maxwell v. Gallagher*, 709 A.2d 100 (D.C.1998), as indicating that shares of stock will not substitute for compensatory damages in determining whether an award of punitive damages may be sustained.

In *Maxwell, supra*, we recognized, citing *Dyer, supra*, that there has been "some uncertainty in our decisions over the years" as to whether any award of compensatory damages is required before punitive damages may be imposed. *Maxwell, supra*, 709 A.2d at 103. Consequently, we articulated the principle on which this court decides the issue: "[T]he principle we derive [from our past decisions] is that, before punitive damages may be awarded, there must be a basis in the record for an award of actual damages, even if nominal." *Id.* We reversed the trial court's award of punitive damages in *Maxwell*, a case involving shares of stock because, although the trial judge imposed nominal damages of $1.00 to accompany a $75,000 award of punitive damages, she nonetheless "expressly found that appellees had proven no actual damages ...." *Id.* at 105. Therefore, "punitive damages could not be awarded." *Id.*

Although Bykofsky argues that the award of twenty-three shares of Aurora stock is sufficient to support the requirement of actual damages, we have been unable to find any credible evidence in the record as to the value of the stock.[6] In

---

5. Beside the words "compensatory damages" on the jury verdict form, the jury foreperson wrote "Zero" for count 6 and counterclaim 1.

6. Aurora points to various audited financial statements of the corporation for years between 1980 and 1992 which show no discer-

nible value of its stock. Bykofsky singles out a letter dated August 4, 1994, from Aurora's President to a bank showing the following information: "retained earnings = credit 352,696, resulting in total stockholders equity of $353,696," but there is no indication of the

addition, we see no evidence in the record of any loss suffered by Bykofsky due to Aurora's purported retention of his stock certificate. *See Maxwell, supra,* 709 A.2d at 104 n. 8. With regard to the counterclaim involving the alleged conversion of the Mercedes, Aurora presented to the jury the evidence it had as to its actual loss stemming from Bykofsky's retention of the car (*e.g.,* attorney's fees and replacement car costs). However, the jury, the fact finders in this matter, apparently determined that the evidence presented at trial did not support an award of compensatory damages with respect to either Bykofsky's or Aurora's conversion claim.[7]

■■■ After the jury rendered its verdict, the trial judge first vacated the awards of punitive damages and then reinstated the awards, apparently without explanation. Since the trial judge's actions were taken prior to our decision in *Maxwell, supra,* the judge may well have been confused by "some uncertainty in our decisions [regarding the compensatory/punitive damages issue] over the years." 709 A.2d at 103. Nonetheless, we see nothing in the record before us that requires reversal of the jury's conclusion that neither Aurora nor Bykofsky was entitled to compensatory damages on the respective conversion claims. Consequently, we vacate the award of punitive damages as to count 6 of Bykofsky's complaint, and count 1 of Aurora's counterclaim.

### The Deferred Compensation Claims

■■■ Aurora asserts that the trial court should have set aside the awards to Bykofsky for 1978 and post—1978 deferred compensation and interest. Aurora contends that the trial court erred in directing a verdict for Bykofsky as to whether he was entitled to the principal relating to the 1978 deferred compensation benefits because the statute of limitations barred the

value of each share of stock, given Aurora's financial history.

1978 claim, and that Bykofsky was not entitled to post—1978 deferred compensation, including interest. In support of the 1978 deferred compensation award, Bykofsky relies on the 1986 minutes of Aurora's Board of Directors which extended the maturity date of the 1978 deferred compensation package. The record shows that the post—1978 deferred compensation was reaffirmed repeatedly in Aurora's corporate tax returns and its audited financial statements. Therefore, we cannot say that the trial court erred in denying Aurora's directed verdict motion with respect to the principal sum of the 1978 deferred compensation claim, and instead, ruling that as a matter of law neither the statute of limitations nor the doctrine of laches barred Bykofsky's claim of entitlement to the principal sum of $16,250, because Aurora's minutes, corporate records and financial statements showed that Aurora continued to acknowledge its obligation to Bykofsky. We are satisfied that on the record before us, "the evidence is so clear that reasonable persons could reach but one conclusion" as to whether the statute of limitations barred Bykofsky's claim as to the principal sum of the 1978 deferred compensation. *Osbourne, supra,* 727 A.2d at 324 (other citations omitted). Furthermore, in our deferential review of the trial court's denial of Aurora's motion notwithstanding judgment with regard to the post—1978 deferred compensation payments with interest, and in viewing the evidence in the light most favorable to Bykofsky, the prevailing party, and recognizing the role of the jury in making credibility and factual determinations, we conclude that the trial court did not err in denying Aurora's post-trial motion. *See Durphy, supra,* 698 A.2d at 465.

### The Promissory Note

■■■ Aurora maintains that the $80,000 promissory note to Bykofsky is

7. The trial judge did not instruct the jury that compensatory or actual damages were required before punitive damages could be awarded.

unenforceable as a matter of public policy and that there is a statutory bar to enforcement. In making its public policy argument, Aurora relies in part upon a few provisions of the Federal Acquisition Regulations (FAR),[8] and also makes a vague reference to "the legislative directives contained in the regulations," without any specific statutory citations. Bykofsky asserts that under *Vector Realty Group, Inc. v. 711 Fourteenth St., Inc.*, 659 A.2d 230 (D.C.1994), the judge should have granted his motion to alter and amend judgment and awarded him the full amount of the principal and interest due under the promissory note which, at trial, he calculated as $166,481.92. We see no support in the record for Aurora's contentions. Neither in its argument for judgment as a matter of law during trial, nor in its closing argument, nor in its post-trial motion for judgment notwithstanding the verdict, did Aurora assert the public policy argument that it now makes on appeal. Therefore, we decline to entertain it. As the court said in *Miller v. Avirom*, 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967):

> In our jurisprudential system, trial and appellate processes are synchronized in contemplation that review will normally be confined to matters appropriately submitted for determination in the court of first resort. Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal.

(Footnotes omitted). Moreover, " 'parties may not assert one theory at trial and another theory on appeal.' " *D.D. v. M.T.*, 550 A.2d 37, 48 (D.C.1988) (quoting *Hackes v. Hackes*, 446 A.2d 396, 398 (D.C.1982)). To the extent that Aurora disputes factual matters decided by the jury, it cannot prevail. *See* D.C.Code § 17–305 (1997) ("When the issues of fact were tried by jury, the [appellate] court shall review the case only as to matters of law.").

▇ The record on appeal does not support Bykofsky's contention that he was entitled to an award of $166,481.92 on the promissory note. Although Bykofsky calculated this sum at trial, he also acknowledged that a government audit had questioned and initially disallowed the $240,000 bonus to three Aurora corporate officers that subsequently was reflected in a promissory note of $80,000 for each corporate officer. He testified, however, that an appeal to the Armed Service Board of Contract Appeals allowed Aurora to keep $120,000 of the $240,000 allocated to bonuses for the corporate officers. The jury apparently determined the amount due to Bykofsky under the promissory note was $27,000, based upon the $120,000 the government allowed for the bonuses and the $13,000 which already had been paid to him. Under that calculation, each corporate officer would have been entitled to $40,000 of the $120,000 allowed by the government. Since each officer had been paid $13,000 on the promissory note, the remaining amount available for each would have been $27,000, the amount the jury awarded to Bykofsky.

We do not read *Vector, supra*, as controlling in this case involving underlying government contracts where government auditors have disallowed half of the sum earmarked for bonuses which are reflected in promissory notes. *Vector* involved a private sector agreement for payment of a real estate commission, rather than an agreement whose sums for payment were derived from government contracts where government auditors had disallowed half of those sums. On this record, we conclude that the trial court did not abuse its discretion in denying Bykofsky's motion to alter or amend his $27,000 judgment on the promissory note.

8. Aurora cites "FAR 31.205–6(a)(1); 31.205–20, 31.205–6(k), and 30.415." These provisions are set forth in 48 C.F.R. pt. 30 and pt. 31.

*The Aurora Stock Claimed By Bykofsky*

Aurora asserts that Bykofsky owns no Aurora stock; that the statute of frauds defeats his claim; and that Aurora was not authorized to issue stock in excess of the shares permitted to be distributed under its Articles of Incorporation.[9] Bykofsky relies on Aurora's audited financial statements and the testimony of members of the Board of Directors to support the jury's special finding that he owns twenty-three shares of Aurora stock. He also maintains that Aurora improperly retained his stock certificate when the corporation locked him out of his office, and that both the issues relating to the statute of frauds and the issuance of stock in excess of that authorized, were not presented to the trial court.

 We agree that the issue pertaining to the statute of frauds was not presented to the trial court, and thus, may not be considered by this court. *See Miller, supra; D.D., supra.* With respect to the question of the issuance of stock in excess of the corporation's authority, however, this matter was raised after the jury's verdict. The trial court reminded counsel that testimony had been introduced at trial as to the proper alignment of stock. Our review of the record shows that Aurora filed federal corporation income tax returns during the period 1985 through 1993. Each of these returns reflected Aurora's stock ownership consistently as: Walker—51%; Statman—26%; and Bykofsky—23%. In addition, Aurora's 1993 application to Citibank set forth the same percentages for the company's stock ownership. Accordingly, viewing the evidence in the light most favorable to Bykofsky, as we must under *Durphy, supra,* the jury had a basis for awarding twenty-three shares of Aurora stock to Bykofsky. We see no reason to disturb the trial court's judgment as to this award.

*Aurora's Conversion of Negotiable Instrument (Check) and Fraud and Misrepresentation Counterclaims*

 Aurora complains that the trial court directed verdicts in Bykofsky's favor on its counterclaims 2, conversion of a negotiable instrument (check), and counterclaim 3, fraud and misrepresentation. Bykofsky supports the trial court's rulings. We conclude that the trial court properly directed the verdict as to counterclaim 2 because payment was stopped on the check at issue, and thus, Aurora suffered no actual damages. As the trial court stated:

> I think as a matter of law the jury cannot find any compensatory damages ... given the fact that [payment on] the check that was issued ... was stopped and [the money] was never paid to Mr. Bykofsky....

The trial court also found that Bykofsky was authorized to sign checks on the corporate account.

When the trial judge asked Aurora's counsel to detail the fraud and misrepresentation counterclaim, she responded:

> The fraud and misrepresentation basically is [the] situation where Mr. Bykofsky made representations to both Mr. Walker and to Dr. Statman related to the promissory notes, and the purpose for the promissory notes, and then later turned around and changed the position to indicate that it was really for the purpose of giving them an actual benefit.

Counsel for Aurora also tied the fraud and misrepresentation to the two payments Bykofsky received on the $80,000 promissory notes, arguing that these sums could not have been payments on the promissory note since a different amount was reflected in the payment schedule for the note. In directing a verdict on counterclaim 2, the trial judge stated: "I can't find that there's sufficient evidence of fraud and misrepre-

---

9. Aurora's corporate officers, Walker and Statman, owned 79 shares of the authorized stock. Bykofsky's claim as to 23 shares would have exceeded by 2 shares the number authorized by Aurora's Articles of Incorporation.

sentation to go to the jury. For that reason I'm going to grant [the] motion for directed verdict in favor of [Bykofsky] on that count." In essence, the trial court determined that, at best, there was a dispute as to the reason for the $5,500 and the $7,500 payment.

In connection with its argument as to the fraud and misrepresentation counterclaim, Aurora also asserts that the trial court should have permitted the testimony of defense witnesses, especially Walker and Statman, to explain the minutes of the Board of Director's meeting pertaining to the $5,500 and the $7,500 payments to Bykofsky. The record shows that the issue of the Board minutes and these payments was raised just prior to the presentation of the defense case. Defense counsel acknowledged that Statman, who signed the minutes at issue, "cannot testify that he did not sign the minutes." Rather, defense counsel asserted, "Dr. Statman can testify as to what his understanding was for the purpose of signing the minutes." The trial court decided not to rule on the evidentiary issue at that point, saying only: "I think I'm in a bet-ter position to rule on things once I hear whatever [the] testimony is going to be." Our review of the record shows that the issue was not raised again during the trial. Thus, we are constrained to agree with the trial court that there was no credible evidence of fraud and misrepresentation with respect to the $5,500 and $7,500 payments to Bykofsky.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court with respect to all issues, except for the award of punitive damages to Bykofsky on count 6 of his complaint, and to Aurora on count I of its counterclaim. We remand the punitive damages issues to the trial court with instructions to vacate the award of punitive damages to Bykofsky and to Aurora.

*So ordered.*