**Doris Holland DORN, Plaintiff,**

v.

**John W. McTIGUE, Defendant.**

**No. CIV.A. 98–2149(RMU).**

United States District Court,
District of Columbia.

Sept. 28, 2000.

Peter Allman Greenburg, Greenburg, Spence & Green, LLC, Rockville, MD, for plaintiff.

Patricia M. Tazzara, Alfred F. Belcuore, Joseph Montedonico, Diane G. Lucas, Montedonico, Hamilton & Altman, P.C., Chevy Chase, MD, for John W. McTigue, defendant.

Lee Thomas Ellis, Jr., Baker & Hostetler, L.L.P., Washington, DC, for National Capital Reciprocal Ins. Co., defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

### Denying the Plaintiff's Motion for Order Determining Burden of Proof as to Consumer Protection Claim

### I. INTRODUCTION

This matter comes before the court on the plaintiff's motion for an order determining the proper burden of proof on her Consumer Protection Claim ("the plaintiff's motion"). The plaintiff, Doris Holland Dorn ("the plaintiff" or "Ms. Dorn"), seeks an order from this court ruling that an unintentional violation of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C.Code §§ 28–3901–3904, may be proved by a preponderance of the evidence. Specifically, the plaintiff seeks an order deciding this burden of proof in the event that she can only prove an "unintentional," rather than an "intentional," misrepresentation under § 28–3904(e). *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 4. In addition, the plaintiff asks for an order entitling her to attorney's fees, expenses, and compensatory damages if she succeeds in proving an unintentional violation of the CPPA.

Applying the two-prong test the court established in its Memorandum Opinion issued on July 26, 1999 ("Mem.Op."), the court determines that an unintentional misrepresentation claim, under these facts, would fall outside the scope of the CPPA as it applies to the practice of medicine. Thus, the court need not decide which burden of proof applies to an unintentional misrepresentation claim under the CPPA. Accordingly, the court hereby denies the plaintiff's motion.

### II. BACKGROUND

In October 1995, Ms. Dorn went to the office of Dr. John W. McTigue ("the defendant" or "Dr. McTigue") for her annual eye examination. During this visit, Ms. Dorn complained of decreased vision. Dr. McTigue diagnosed Ms. Dorn with cataracts and, on November 16, 1995, performed cataract surgery on her. During the course of the procedure, however, a portion of the plaintiff's lens fell into the posterior portion of her eye. After Dr. McTigue tried unsuccessfully to remove the lens, he sent the plaintiff to the Washington Hospital Center for further surgery. Even after the corrective surgery was performed, the plaintiff suffered irreparable damage to her retina, resulting in total loss of sight in her left eye. *See* Compl. at 3–4.

In counts I and II of the amended complaint, Ms. Dorn alleges that the defendant's decision to perform surgery constituted medical malpractice because he failed to meet the applicable standard of care and failed to obtain informed consent from the plaintiff. In Count III, the claim now at issue, Ms. Dorn alleges that the defendant's negligence and failure to obtain informed consent constituted an "unlawful trade practice" as defined by the CPPA. *See* Am. Compl. at 7.[1]

In the July 26, 1999 Memorandum Opinion denying the defendant's motion to dismiss, the court addressed the viability of the plaintiff's CPPA claim. The court held that the CPPA applies to the physician-patient context, but only when the plain-

---

1. Ms. Dorn characterizes Count III as alleging multiple violations of the CPPA, specifically, D.C.Code §§ 28–3904(d), (e), and (f). *See* Pl.'s Opp'n at 10. Because these claims are so similar, for the purpose of ruling on the plaintiff's motion the court will treat these three subsections of the CPPA as "misrepresentation." Thus, this ruling applies not only to D.C.Code § 28–3904(e) but also to D.C.Code §§ 28–3904(d) and (f).

tiff's claim relates to the entrepreneurial aspects of the physician's practice. *See* Mem. Op. at 5. In extending the reach of the CPPA to medical practitioners, the court adopted the clear-and-convincing burden of proof for intentional misrepresentations that was established in *Osbourne v. Capital City Mortgage Corp.,* 727 A.2d 322, 325 (D.C.1999). *Id.*

Now the plaintiff asks the court to determine the burden of proof that would apply if the plaintiff could prove only an *unintentional* or *inadvertent* violation of the CPPA. Consistent with its 1999 Memorandum Opinion, the court holds that under these facts, an unintentional-misrepresentation claim would fall outside the scope of the CPPA as it applies to the medical field. Accordingly, the court need not reach the question of the burden of proof for unintentional violations.

### III.   ANALYSIS

### A.   Unintentional Violations of the CPPA

■   Before the court may determine which burden of proof governs claims of unintentional violations of the CPPA, it must first ascertain whether such a claim can proceed in this case. Otherwise, the court would be issuing an advisory opinion.[2] When the court denied the defendant's motion to dismiss, it had considered a claim for intentional misrepresentation in violation of the CPPA. *See* Mem. Op. at 5. The parties had not asked the court to address whether a claim for *unintentional* misrepresentation under the CPPA could also proceed.

The plaintiff now requests an order determining the burden of proof she would have to meet to prove an unintentional violation of the CPPA. In *Osbourne v. Capital City Mortgage Corp.,* 667 A.2d 1321, 1330 (D.C.1995), the court decided

the burden of proof for intentional violations of D.C.Code § 28–3904(e), but declined to express an opinion on whether the CPPA would cover allegations of unintentional misrepresentation. Thus, the case at bar raises an issue of first impression, namely, the viability of an unintentional misrepresentation claim under D.C.Code § 28–3904(e).

### B.   The CPPA Disallows Medical– Malpractice Claims

In its July 26, 1999 Memorandum Opinion, this court held that the CPPA applies to the physician-patient context, provided that the claimants: (1) satisfy the threshold requirements set forth in D.C.Code § 28–3904; and (2) demonstrate a nexus between the claims at issue and the entrepreneurial aspect of the medical practice. *See* Mem. Op. at 5.

■   The entrepreneurial-nexus requirement is designed to prevent parties from bringing standard medical-malpractice claims under the CPPA. This court has adopted the approach articulated by the Michigan courts in *Nelson v. Ho,* 222 Mich. App. 74, 564 N.W.2d 482, 486 (1997) to determine the line between standard malpractice claims and consumer protection claims. *See* Mem. Op. at 5. In that case, the Michigan Court of Appeals held that, "only allegations of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice may be brought under the [Michigan Consumer Protection Act]." *Nelson,* 564 N.W.2d at 486. Simply put, this means that claims relating to the *actual competence* of the medical practitioner do not qualify for protection under the CPPA. *See* Mem. Op. at 5.

The requirement of an entrepreneurial nexus comports with the general aim of

---

**2.** It is horn-book law that Article III courts may not issue advisory opinions. *See Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346, 56 S.Ct. 466, 80 L.Ed. 688 (1936); *United States v. Weston,* 194 F.3d 145, 147

(D.C.Cir.1999) ("[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.' ") (citations omitted).

the CPPA to "assure that a just mechanism exists to remedy all improper trade practices" and "to promote fair business practices throughout the community." *See* Mem. Op. at 5 (citing D.C. code §§ 28–3901(b)(1)–(2)). By recognizing that certain aspects of the medical practice are severable from the broad scope of malpractice, this requirement ensures that consumers do not lose statutory protection within the physician-patient context. The scope of such a claim under the CPPA, however, is limited to economic considerations related to the medical profession, and does not cover the skill or performance of a medical practitioner. In its 1999 Memorandum Opinion, this court juxtaposed several examples to highlight this distinction. *See* Mem. Op. at 6.

In *Quimby v. Fine*, 45 Wash.App. 175, 724 P.2d 403 (1986), the court provided guidance as to what types of physician conduct could be considered part of the economic aspect of the practice of medicine. For example, the court held that an informed-consent claim could be based upon "dishonest or unfair practices used to promote the entrepreneurial aspects of a doctor's practice, such as when the doctor promotes an operation or service to increase profits and the volume of patients, then fails to adequately advise the patient of risks or alternative procedures." *Quimby*, 724 P.2d at 406. Similarly, in *Gadson v. Newman*, a federal court allowed a claim under the Illinois Consumer Fraud Act to proceed when the plaintiff alleged that the defendant psychiatrist had an undisclosed contract with a hospital that included financial incentives, selfreferrals, and increased billings. *See* 807 F.Supp. 1412, 1420 (C.D.Ill.1992). On the other hand, in *Nelson v. Ho*, the court prevented what it considered to be the plaintiff's medical malpractice claim—her allegation that the doctor falsely said she did not have a suture breaking through the skin of her nose, when in fact she did—from proceeding under the MCPA. *See* 564 N.W.2d at 487.

■ Applying this analytical framework, the court determines that based on the facts in this case, the plaintiff's unintentional-misrepresentation claim falls outside the scope of the CPPA as it applies to the physician-patient relationship. The court reaches this conclusion based on the test outlined in its July 26, 1999 Memorandum Opinion. In that opinion, this court adopted the *Gadson* court's holding which underscored the importance of preventing overlap between medical-malpractice claims and consumer-protection claims. "The distinction between the business aspects of medicine or the 'actual practice of medicine' or the non-business aspects of medicine is crucial." *Gadson*, 807 F.Supp. at 1416.

Therefore, even assuming *arguendo* that the plaintiff could prove that the defendant made an unintentional misrepresentation regarding the plaintiff's surgery, such a misrepresentation merely amounts to *the actual practice of medicine*. Such an unintentional misrepresentation would speak not to the entrepreneurial aspect of the defendant's practice, but instead to his skill and competence as a doctor. Any resulting injury would be properly remedied by a medical-malpractice claim, not a CPPA claim.

Accordingly, because the court holds that an unintentional misrepresentation claim in this context falls outside the reach of the CPPA as it relates to the medical practice, the court declines to rule on the burden-of-proof issue raised by the plaintiff's motion.

Finally, this opinion is entirely consistent with the July 26, 1999 Memorandum Opinion issued in this case. While the court now holds that Ms. Dorn could not proceed with an unintentional misrepresentation claim under the CPPA, she can, of course, still proceed with an intentional misrepresentation claim under the CPPA. In addition, as noted in the earlier Memorandum Opinion, Ms. Dorn has to prove her intentional misrepresentation claim by clear and convincing evidence.

## IV. CONCLUSION

For the reasons stated above, the court will deny the plaintiff's motion for an order determining the burden of proof for an unintentional violation of the District of Columbia Consumer Protection Procedures Act. An Order consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this ____ day of September, 2000.