**Robert F. SIMMONS and Tawanda R. Simmons, Appellants,**

v.

**Dr. Harry STEPHENSON, Appellee.**

No. 2001–CA–000118–MR.

Court of Appeals of Kentucky.

Aug. 16, 2002.

Robert F. Simmons, Louisville, pro se.

Tawanda R. Simmons, Louisville, pro se.

William P. Swain, Louisville, KY, for appellee.

Before BARBER, BUCKINGHAM, and COMBS, Judges.

OPINION

BUCKINGHAM, Judge.

Robert F. Simmons and Tawanda R. Simmons appeal from a summary judg-

ment granted by the Jefferson Circuit Court in favor of Dr. Harry Stephenson. We affirm.

On September 23, 1998, Dr. Stephenson performed cataract correction surgery on the right eye of Robert F. Simmons. Simmons began to complain of pain and visual problems in his eye following the surgery. He subsequently went to other doctors who noted the presence of a lens fragment in the eye. Simmons was eventually referred to Dr. Catherine Newton who, on December 2, 1998, removed the fragment from Simmons' eye.

On September 7, 1999, the Simmonses filed a *pro se* complaint in the Jefferson Circuit Court against Dr. Stephenson. The complaint stated that it was filed pursuant to the Kentucky Consumer Protection Act, but it also referred to alleged medical negligence by Dr. Stephenson.

On November 27, 2000, summary judgment was entered by the circuit court in favor of Dr. Stephenson. In support of the judgment, the court noted that there was no expert medical proof to support the Simmonses' claim and that reliance on the Consumer Protection Act was misplaced. This appeal followed.

In their brief before this court, the Simmonses characterize their civil complaint as being filed pursuant to the Consumer Protection Act.[1] It does not appear that they allege medical negligence. Rather, they allege that Dr. Stephenson engaged in "misleading" and "deceptive" acts which caused Simmons to endure severe pain and suffering and impaired vision. Specifically, the Simmonses complain that Dr. Stephenson advised Simmons to return for a follow-up office visit in six months rather than advising him of the presence of a fragment in his eye and of the immediate need for surgery.

KRS 367.170(1) states that "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Simmonses assert that relief under the Consumer Protection Act is in addition to any relief or remedy provided by way of a malpractice action. Furthermore, they maintain that expert testimony is not required to determine whether the acts complained of are false, misleading, or deceptive.

We agree with the trial court that, while the Simmonses' complaint may state a cause of action for medical malpractice, the Simmonses may not pursue their claims under the Consumer Protection Act. "Trade" and "commerce", as those terms are used in KRS 367.170(1) and KRS 367.110(2) are defined as follows:

[T]he advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value, and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth.

In our opinion eye surgery does not constitute a "trade" or "commerce" within the meaning of the statute.

We know of no Kentucky case that addresses this issue. However, *Dorn v. McTigue*, 121 F.Supp.2d 17 (D.D.C.2000), is a case involving strikingly similar facts and issues. In that case, Dorn went to Dr. McTigue's office for her annual eye examination and was diagnosed with cataracts. Dr. McTigue performed cataract surgery on Dorn and, during the procedure, a portion of her lens fell into the posterior portion of her eye. She eventually suffered irreparable damage to her retina and lost total vision in that eye.

---

1. *See* Kentucky Revised Statutes (KRS) 367.110–.390.

One of the counts in Dorn's civil complaint against Dr. McTigue alleged violation of the District of Columbia Consumer Protection Procedures Act (CPPA). In dismissing Dorn's CPPA claim, the court held that in order for the CPPA to apply in the physician-patient context, the claimant must demonstrate a nexus between the claims and the entrepreneurial aspect of the medical practice. *Id.* at 19. Thus, the court held that an allegation of negligence and failure to obtain informed consent did not constitute an "unlawful trade practice" as defined by the CPPA. *Id.*

The federal court's opinion in the *Dorn* case adopted the approach by the Michigan courts. *Dorn,* 121 F.Supp.2d at 19. In *Nelson v. Ho,* 222 Mich.App. 74, 564 N.W.2d 482 (Mich.Ct.App.1997), the Michigan Court of Appeals held that:

> [O]nly allegations of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice may be brought under the MCPA [Michigan Consumer Protection Act]. Allegations that concern misconduct in the actual performance of medical services or the actual practice of medicine would be improper.

*Id.* at 486. The court further held, "Only when physicians are engaging in the entrepreneurial, commercial, or business aspect of the practice of medicine are they engaged in 'trade or commerce' within the purview of the MCPA." *Id.*

■ In accordance with the aforementioned authorities, we conclude that the Simmonses stated no claim under the Kentucky Consumer Protection Act. The allegations in the complaint did not relate to the entrepreneurial, commercial, or business aspect of Dr. Stephenson's practice of medicine. In short, we conclude the trial court did not err in awarding Dr. Stephenson summary judgment.

■ Furthermore, to the extent the Simmonses' complaint states a cause of action for medical malpractice, the trial court correctly granted summary judgment due to the Simmonses' failure to produce expert medical proof to support their claim. *See Morris v. Hoffman,* Ky. App., 551 S.W.2d 8 (1977).[2]

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

**2.** The court in *Morris* held that "[n]egligence in medical malpractice cases must be established by expert testimony unless negligence and injurious results are so apparent that a layman with general knowledge would have no difficulty recognizing it." *Id.* at 9. It is not obviously apparent to a layperson that the presence of a fragment in the eye following cataract surgery constitutes medical negligence. Expert testimony was required in this case to prove any medical negligence claim.