**Randy BARNETT, Individually and as Personal Representative of the Estate of Evert Barnett, Deceased, Appellant,**

v.

**MERCY HEALTH PARTNERS–LOURDES, INC., a/k/a Lourdes Hospital, Inc., Appellee.**

No. 2006–CA–000889–MR.

Court of Appeals of Kentucky.

Aug. 31, 2007.

Ronald E. Osman, Marion, IL, for appellant.

Richard L. Walter, Paducah, KY, for appellee.

Before COMBS, Chief Judge; KELLER, Judge; BUCKINGHAM,[1] Senior Judge.

## OPINION

KELLER, Judge.

Randy Barnett (Barnett) as personal representative for the Estate of Evert Barnett (Evert) appeals from the McCracken Circuit Court's order granting Mercy Health Partners–Lourdes, Inc.'s (Lourdes) motion for summary judgment. Barnett argues that the circuit court's finding that there are no genuine issues of material fact is in error because there is evidence that he suffered damages based on his breach of contract claim. Furthermore, Barnett argues that the Kentucky Consumer Protection Act (the Act) applies to Lourdes and that he suffered damages as a result of Lourdes's violation of provisions of the Act. Lourdes argues that Barnett failed to prove any damages based on the breach of contract claim and that, even if the Act applies to Lourdes, it did not violate any provisions of the Act and Barnett has failed to prove any damages under the Act. For the reasons set forth below, we affirm.

### FACTS

On February 14, 2000, Evert began to experience chest pains and his grandson, Barnett, took Evert to Lourdes for evaluation and treatment. While evaluating

---

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Evert for his complaints of chest pains, a physician discovered a lump under Evert's arm. The physician believed the lump could be a lymphoma and so Evert underwent surgery to remove the lump on February 18, 2000. Barnett alleges that the surgeon who performed the biopsy, Dr. Brunson, was intoxicated at the time of the surgery, that other personnel at Lourdes and in the operating room knew of Dr. Brunson's condition, and that they unsuccessfully tried to stop him from performing the surgery. Following surgery, Evert developed some complications and ultimately suffered a stroke. Evert managed to live at home for a short period of time following his release from Lourdes, but he eventually was placed in a nursing home, where he died several months later.

In November of 2001, Barnett filed a complaint individually and on behalf of Evert's estate containing various allegations against Lourdes and Dr. Brunson, including claims for intentional and negligent infliction of emotional distress and battery. The circuit court dismissed the battery and negligent and intentional infliction of emotional distress claims against Lourdes and Dr. Brunson. Barnett appealed the dismissal of the intentional infliction of emotional distress claim, and this Court affirmed.[2] The circuit court then entered a summary judgment dismissing Barnett's claims for breach of contract and violation of the Act. It is from this order that Barnett appeals. We will set forth additional facts as necessary when we discuss Barnett's breach of contract and Consumer Protection Act claims.

## STANDARD OF REVIEW

"The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. National Feeding Systems, Inc.,* 90 S.W.3d 46, 49 (Ky.2002). Summary judgment is only proper when "it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). In ruling on a motion for summary judgment, the Court is required to construe the record in a light most favorable to the party opposing the motion. *Id.* at 480. A party opposing a summary judgment motion "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* at 481.

## BREACH OF CONTRACT

During the admission procedure, Barnett signed a number of documents on behalf of Evert. Barnett argues that when he signed a document agreeing to be responsible for payment for Evert's treatment, he created a contract with Lourdes. The terms of the document Barnett relies on are set forth, in pertinent part, below.

**CONSENT AND CONDITIONS OF TREATMENT**

I hereby authorize the performance of any medical and/or diagnostic procedures, which may be advised and recommended by my physician(s). As part of the medical procedures or tests, I also consent to testing for human immunodeficiency virus (HIV) infection, hepatitis, or any other blood-borne infectious disease if a physician orders the test for diagnostic purposes. Furthermore, I request the use of any facilities and services of Lourdes and/or Transitional

---

2. 2003–CA–001171–MR and 2003–CA–001198–MR.

Care, which may be regarded as necessary or beneficial in the performance of said procedure.

. . .

**PHYSICIANS ARE NOT HOSPITAL AND/OR TRANSITIONAL CARE EMPLOYEES;** therefore any services they provide to you will be billed separately by the physician. The bill you will receive from Lourdes and/or Transitional Care will reflect the hospital and/or Transitional Care services only. It is your responsibility to give your insurance information to the physicians who provide you service.

**ASSIGNMENT OF BENEFITS AND FINANCIAL AGREEMENT**

I understand and agree that whether I sign as agent of the patient, that in consideration of the services to be rendered on the patient, I obligate myself to pay Lourdes and/or Transitional Care in accordance with the regular rates and terms of the hospital and/or Transitional Care. Further, I authorize and direct insurance benefits to be paid directly to Lourdes and/or Transitional Care in accordance with the terms of my policy. I understand and agree that Lourdes and/or Transitional Care shall have no obligation or duty to the patient to be familiar with the terms of the patient's insurance coverage. Any conditions to insurance coverage, including but not limited to preadmission certification, filings or notices, shall be the sole obligation of the patient and Lourdes and/or Transitional Care shall have no obligation or duty to see that such conditions are met. I agree to pay all patient expenses not paid by insurance. I also agree that the provisions regarding the release of information and assignment of benefits shall apply not only to Lourdes and/or Transitional Care, but also to such physicians, professionals and suppliers of services, or any of them, and their claims for payment.

Based on the above, and from what we can glean from Barnett's brief and oral argument, Barnett is arguing that, in consideration for his agreement to pay for Evert's treatment if insurance would not cover the expenses, Lourdes agreed to treat Evert, exercising appropriate care. Barnett argues that Lourdes breached the contract when it permitted an intoxicated surgeon to perform surgery on Evert. Finally, Barnett argues that he performed all of his obligations under the contract as Lourdes has been paid for its services. However, Barnett has not put in the record any evidence that he paid any amount to Lourdes on behalf of Evert.

■ To be enforceable, a "contract must contain definite and certain terms setting forth promises of performance to be rendered by each party." *Kovacs v. Freeman,* 957 S.W.2d 251, 254 (Ky.1997). Reviewing the documents signed by Barnett, it appears that Barnett did promise to pay for any amounts that would not be covered by Evert's insurer. Although the documents do not contain any specific promise by Lourdes to provide care or as to the quality of care, the fact that Lourdes rendered care implies such a promise. Therefore, we hold that an express contract existed between Barnett and Lourdes.

■ However, establishing the existence of a contract is not sufficient to sustain a cause of action for breach of contract. Barnett must also prove that Lourdes breached the contract and that he suffered damages as a result of that breach. In an action for breach of contract, the measure of damages "is that sum which will put the injured party into the same position he would have been in had the contract been performed." *Perkins*

*Motors, Inc. v. Autotruck Federal Credit Union*, 607 S.W.2d 429, 430 (Ky.App.1980).

■ This is where Barnett's claim for breach of contract fails. Assuming for the sake of argument that Lourdes did breach the contract, Barnett has not put forth any evidence that he suffered any damages. Barnett alleges that, had he and Evert known that the surgeon was intoxicated, Evert would not have gone forward with the surgery and the expenses related to the surgery would not have been incurred. That may be true. However, Barnett has not put forth any evidence that he was liable for or paid any of the expenses related to the surgery. Therefore, Barnett has not suffered any damages as his position has not changed as a result of the alleged breach.

■ In addition to his contract claim, Barnett has asserted a contract claim on behalf of Evert's estate. Barnett argues that an implied contract existed between Evert and Lourdes by virtue of Lourdes's offer of treatment and Evert's acceptance of that offer. Lourdes argues that no implied contract existed between it and Evert. Because Barnett has failed to prove that any amount was paid by the estate to Lourdes on behalf of Evert, he has failed to prove that the estate suffered any damages. Therefore, whether a contract existed between Evert and Lourdes and whether any such contract was breached is of no consequence.

## CONSUMER PROTECTION ACT

Barnett argues that Lourdes made certain representations on its web page regarding the quality of care and that those representations, at least as to the treatment received by Evert, were untrue and amounted to "[u]nfair, false, misleading, or deceptive acts or practices...." KRS 367.170(1). Furthermore, Barnett argues that when Lourdes concealed the actions of Dr. Brunson from Evert and his family, Lourdes continued to engage in the preceding acts or practices. Finally, Barnett argues that the Act applies to Lourdes because the complained of actions were perpetrated by the business and entrepreneurial staff of Lourdes. Lourdes argues that the Act does not apply to this action, which is, or should be, a medical malpractice claim. Furthermore, as with Barnett's contract claims, Lourdes argues that Barnett has failed to prove any damages.

We begin our analysis with a review of the Act. KRS 367.170(1) provides that "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are ... unlawful." KRS 367.170(2) provides that "unfair shall be construed to mean unconscionable." KRS 367.110(2) defines "trade" and "commerce" as:

> the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value, and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth.

KRS 367.220(1) gives a right of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property ... as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170...."

■ At the outset of our analysis, we note that Barnett's action under the Act must fail for the same reason as his breach of contract actions. Barnett has failed to offer any evidence that he or Evert's estate suffered any ascertainable loss of money or property as a result of any ac-

tions or inactions by Lourdes. While we could end our analysis at this point, we will address the issue of whether the Act applies in this case as that issue has not been clearly addressed by any appellate court in Kentucky.

Both Barnett and Lourdes have cited *Simmons v. Stephenson*, 84 S.W.3d 926 (Ky.App.2002), as supportive of their arguments. In *Simmons*, Stephenson performed cataract correction on Simmons's right eye. Following the surgery, Simmons began to experience pain in his eye. Simmons sought treatment with another physician who noted the presence of a lens fragment in Simmons's eye. That physician removed the lens fragment and Simmons ultimately filed suit against Stephenson alleging both medical negligence and violation of the Act. With regard to the claim for violation of the Act, Simmons alleged that Stephenson engaged in misleading and deceptive acts when he advised Simmons to return six months after surgery rather than advising him of the presence of the lens fragment and performing surgery to remove the fragment.

This Court held that the action did not fall within the Act because eye surgery did not constitute a "trade" or "commerce" as defined by the Act. While this Court held that the Act did not apply to the eye surgery, it found that the Act would apply if the allegations in Simmons's complaint involved the "entrepreneurial, commercial, or business aspect of Dr. Stephenson's practice of medicine." *Simmons*, 84 S.W.3d at 928. In reaching this conclusion, this Court cited and relied on *Dorn v. McTigue*, 121 F.Supp.2d 17 (D.D.C.2000), which cited and relied on *Nelson v. Ho*, 222 Mich.App. 74, 564 N.W.2d 482 (Mich. Ct.App.1997). Therefore, we believe that a review of those cases is appropriate.

In *Dorn*, McTigue performed cataract surgery on Dorn. During the surgery, a portion of Dorn's lens fell into her eye. McTigue tried to remove the lens but was unsuccessful. Therefore, he referred Dorn to another surgeon, who removed the lens. As a result of the surgeries, Dorn suffered irreparable damage to her retina, which caused total loss of sight in that eye. In her complaint, Dorn alleged that McTigue's negligence and failure to obtain informed consent constituted an unlawful trade practice under the District of Columbia's Consumer Protection Procedures Act ("CPPA").

In analyzing Dorn's claim, the District Court stated that, in order for the CPPA to apply in the context of a medical malpractice claim, a plaintiff must "demonstrate a nexus between the claims at issue and the entrepreneurial aspect of the medical practice." *Dorn*, 121 F.Supp.2d at 19. The court noted that "[t]he entrepreneurial-nexus requirement is designed to prevent parties from bringing standard medical-malpractice claims under the CPPA." *Id.* The court went on to note several examples of what would constitute a violation of the CPPA by a physician.

> In *Quimby v. Fine*, 45 Wash.App. 175, 724 P.2d 403 (1986), the court provided guidance as to what types of physician conduct could be considered part of the economic aspect of the practice of medicine. For example, the court held that an informed-consent claim could be based upon "dishonest or unfair practices used to promote the entrepreneurial aspects of a doctor's practice, such as when the doctor promotes an operation or service to increase profits and the volume of patients, then fails to adequately advise the patient of risks or alternative procedures." *Quimby*, 724 P.2d at 406. Similarly, in *Gadson v. Newman*, a federal court allowed a claim under the Illinois Consumer Fraud Act to proceed when the plaintiff alleged

that the defendant psychiatrist had an undisclosed contract with a hospital that included financial incentives, selfreferrals (sic), and increased billings. *See* 807 F.Supp. 1412, 1420 (C.D.Ill.1992). On the other hand, in *Nelson v. Ho,* the court prevented what it considered to be the plaintiff's medical malpractice claim—her allegation that the doctor falsely said she did not have a suture breaking through the skin of her nose, when in fact she did—from proceeding under the MCPA. *See* 564 N.W.2d at 487.

*Dorn,* 121 F.Supp.2d at 20.

In *Nelson,* Ho performed surgery on Nelson's nose. Following surgery, Nelson developed an infection, which she believed was the result of a suture breaking through the skin. Nelson made several follow-up visits to Ho, who assured her she could not have a suture as he had used dissolvable sutures. Eventually, Nelson sought treatment with another surgeon, who removed the undissolved suture. Nelson filed suit against Ho, alleging in part that Ho violated Michigan's Consumer Protection Act ("MCPA"). In her complaint, Nelson asserted that Ho was covered by the MCPA because he "performed a service primarily for personal purposes...." *Nelson,* 222 Mich.App. at 78, 564 N.W.2d at 484.

The Court of Appeals of Michigan summarized a number of cases dealing with the distinction between a "trade" and the "learned professions" and concluded that, because there is a business aspect to the practice of medicine, it could not be wholly excluded from coverage under the MCPA. As did the *Dorn* court and this Court in *Simmons,* the *Nelson* court stated that Michigan's Consumer Protection Act only applied to "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's

practice.... [However,] [a]llegations that concern misconduct in the actual performance of medical services or the actual practice of medicine would be improper." *Nelson,* 222 Mich.App. at 83, 564 N.W.2d at 486. With that standard in mind, the court found that Ho's alleged failure to advise Nelson that he was using non-dissolvable sutures and his representations that Nelson did not have a suture breaking through the skin of her nose were "attacks on the actual performance of [Ho's] medical services...." *Nelson,* 222 Mich.App. at 84, 564 N.W.2d at 487.

Within this context, Barnett argues that the Act should apply because Lourdes's "actions omitting pertinent information and deceiving Appellant as to the actions of Dr. Brunson were committed by the business and commercial staff of Appellee. Appellee was therefore acting in a commercial and business aspect when it made false representations and omissions to the Appellant."

 We disagree. Based on the above, we hold that, in order for the Act to apply, there must be some allegations that the actions complained of were part of the business aspect of the practice of medicine. Such actions would include advertising for a particular procedure or surgery then failing to advise the patient of the risks involved or of alternative treatment; entering into a financial agreement that would increase profits to the possible detriment of patients; or advertising services at a particular cost then charging at a different rate. Negligently performing surgery or providing treatment that is below the standard of care and failing to inform a patient of such actions are not included in the business aspect of the practice of medicine. Therefore, they are not covered under the Act.

731

The actions about which Barnett complains arose from Evert's surgery. Barnett has not put on any proof that Lourdes promoted the services of Dr. Brunson to increase profits or patient volume and then failed to adequately advise Evert of the risks of the surgery. Furthermore, Barnett has not put on any proof that Lourdes and Dr. Brunson had a financial arrangement of any sort, let alone one that gave Dr. Brunson financial incentives for making self referrals. In fact, the only allegation that Barnett has made is that personnel at Lourdes failed to advise him or Evert of the problems that arose during surgery. That does not constitute part of the entrepreneurial aspect of the practice of medicine. Therefore, we hold that the Consumer Protection Act does not apply in this instance.

## CONCLUSION

Based on the above, we hold that Barnett failed to provide any evidence of damages; therefore, the circuit court appropriately granted Lourdes' motion for summary judgment. Furthermore, we hold that, because the actions of Lourdes did not involve the entrepreneurial, commercial, or business aspects of Lourdes' practice of medicine, the Consumer Protection Act does not apply to this set of facts. Therefore, we affirm.

ALL CONCUR.