Elvita JONES, Appellant

v.

Thomas E. CLINCH, M.D.,
et al., Appellees.

No. 08–CV–1190.

District of Columbia Court of Appeals.

Argued Jan. 28, 2010.

Decided Aug. 1, 2013.

Victor E. Long, Washington, DC, for appellant.

James M. Heffler for appellees. Daniel C. Costello entered an appearance for appellees.*

Before GLICKMAN, Associate Judge, and TERRY and RUIZ, Senior Judges.**

TERRY, Senior Judge:

Appellant Elvita Jones filed a two-count civil complaint against appellees, Dr. Thomas E. Clinch and his employer, Eye Doctors of Washington, P.C. ("Eye Doctors").[1] The first count asserted a medical malpractice claim, in which appellant alleged that Dr. Clinch had failed to obtain her informed consent before he performed an intraocular lens replacement surgery known as the "Crystalens" procedure. The second count alleged a violation of the

District of Columbia Consumer Protection Procedures Act, D.C.Code §§ 28–3901 *et seq.* (2001), and sought damages for that violation. The trial court granted appellees' motion for partial summary judgment and dismissed the second count with prejudice. The case then went to trial on the first count, and at its conclusion the jury returned a verdict for appellees.

On appeal from the judgment on that verdict, appellant argues that the trial court erred in granting appellees' motion for summary judgment on Count II of her complaint, and that the court abused its discretion in excluding certain evidence regarding the relative cost of the Crystalens procedure. Given the particular circumstances of this case, we agree with the trial court that Maryland had a greater governmental interest in this dispute and therefore that Maryland law, rather than District of Columbia law, governed this case. We hold accordingly that the trial court committed no error in granting summary judgment for appellees on Count II. In addition, we find no ground for reversal in the evidentiary ruling of which appellant now complains. Accordingly, we affirm the judgment in all respects.

I

■ The trial court granted summary judgment to appellees on Count II of appellant's complaint, in which she sought damages for alleged violations of the District of Columbia Consumer Protection Procedures Act ("CPPA"). Appellees argued in their motion for partial summary

---

* Mr. Heffler filed a brief and presented oral argument on behalf of appellees. Thereafter, while the appeal was still pending, Mr. Heffler withdrew his appearance and that of his law firm. At the same time, Mr. Costello entered his appearance for appellees.

** Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Senior Judge on July 2, 2012.

1. Eye Doctors was formerly known as University Ophthalmic Consultants of Washington. It is incorporated in the District of Columbia and has offices both in downtown Washington, D.C., and in suburban Maryland. Dr. Clinch conducts his practice in the Maryland office.

judgment that because the eye surgery and other underlying acts all took place in Maryland, the "governmental interests" doctrine, by which our courts determine which law to apply, required that Maryland law—rather than District of Columbia law—govern this case since Maryland had a greater interest in the litigation. Appellees relied on our decision in *Drs. Groover, Christie & Merritt, P.C. v. Burke,* 917 A.2d 1110 (D.C.2007), a case with very similar facts. The trial court agreed with appellees that Maryland law was controlling and granted the motion. The result of that ruling was the dismissal of Count II of appellant's complaint with prejudice because in Maryland, unlike the District of Columbia, appellant could not bring a consumer protection suit against appellees. As the court explained in its order:

> There is a conflict in the consumer protection laws. Maryland law exempts doctors from its consumer protection law, whereas the District has no such exemption. [Statutory citations omitted.]

 "Questions of choice of law are ... generally treated as issues of law subject to *de novo* review by the appellate court." *Hercules & Co. v. Shama Restaurant Corp.,* 566 A.2d 31, 40 (D.C.1989). In tort cases, when two jurisdictions "have an interest in applying their own laws to the underlying facts ... the forum law will be applied *unless* the foreign state has a greater interest in the controversy." *Kaiser–Georgetown Community Health Plan, Inc. v. Stutsman,* 491 A.2d 502, 509 (D.C. 1985) (emphasis added). We have summarized our choice-of-law analysis as follows:

> In determining which jurisdiction's law to apply in a tort case, we use the "governmental interests" analysis, under which we evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy

would be more advanced by the application of its law to the facts of the case under review.... As part of this analysis, we also consider the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145:

> a) the place where the injury occurred;

> b) the place where the conduct causing the injury occurred;

> c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

> d) the place where the relationship is centered.

*District of Columbia v. Coleman,* 667 A.2d 811, 816 (D.C.1995) (citations omitted); *see Drs. Groover, Christie & Merritt,* 917 A.2d at 1117; *accord, e.g., Washkoviak v. Student Loan Marketing Ass'n,* 900 A.2d 168, 181 (D.C.2006) ("we look at the two jurisdictions' respective relationships to the complaint by examining the four factors set forth in the Restatement").

In this case we readily conclude, after considering the Restatement factors, that Maryland is the jurisdiction with the most significant relationship to appellant's claim. The place of her alleged injury (the first factor) was Maryland, where appellant participated in an initial consultation and decided to undergo eye surgery, allegedly without having been sufficiently advised of its risks. Maryland was also the jurisdiction in which the conduct causing the injury occurred (the second factor); appellant testified that Dr. Clinch provided her with misleading information during the consultation at his Maryland office and in a subsequent telephone call he made from that office. Applying the third factor, we conclude that there are three jurisdictions that have some interest in this dispute. Appellant is a resident of Virginia; Dr. Clinch resides and practices medicine in Maryland; and Eye Doctors maintains its

principal place of business in Maryland, but is incorporated in the District of Columbia. Nevertheless, the relationship between the parties has been predominantly centered (the fourth factor) in Maryland, where the allegedly deceptive statements were made, where the surgical procedure took place, and where all but two post-operative visits occurred.[2] Thus three of the four factors favor Maryland, and only one partially favors the District of Columbia.

Appellant claims that appellees broadcast a deceptive radio advertisement that she heard while driving her car in the District of Columbia, and that this advertisement should have been sufficient to require the court to apply the law of the forum (the District of Columbia), including specifically the CPPA. In a deposition, however, appellant recalled that this advertisement merely "talked about throwing away your glasses." As appellees emphasize in their brief, "there was never an assertion that any of the allegedly misleading or fraudulent statements by Dr. Clinch were contained in the radio advertisement." Appellant's husband testified at trial that this advertisement consisted only of a statement by a radio host that he and his wife had both been treated by Dr. Clinch, that his wife had had LASIK surgery, and that Dr. Clinch was "the best eye doctor on the east coast." These descriptions of the advertisement, standing alone, afford no basis upon which to infer that a misrepresentation or omission was made. We hold that the radio advertisement, even assuming that it directly led appellant to consult with Dr. Clinch (at his Maryland office, we note), was legally insufficient to outweigh the far more significant factors—in particular, the place

where the allegedly deceptive statements were made (Maryland) and the place where the eye surgery actually occurred (also Maryland)—on which the trial court based its decision to apply Maryland law.

We emphasize that we do not base our decision on "a mere counting of contacts," but on "a qualitative weighing" of the Restatement factors, as *Washkoviak* requires. *See* 900 A.2d at 181–182. The fact that Maryland was the situs of both the allegedly deceptive statements and the surgery is, in our view, more than sufficient to outweigh both the District of Columbia incorporation of the corporate appellee and the mere fortuity that appellant heard a radio advertisement while driving her car in the District of Columbia. Indeed, even if we take into account the corporate status of Eye Doctors and the fact that it maintains an office in the District of Columbia as well as an office in Maryland, Dr. Clinch's connections to Maryland with respect to his treatment of appellant clearly outweigh any connection to the District of Columbia.

We hold that the trial court correctly followed our case law, specifically *Coleman* and *Drs. Groover, Christie & Merritt*, both of which it cited in its order, in granting appellees' motion for partial summary judgment. *See also Bledsoe v. Crowley*, 270 U.S.App.D.C. 308, 311–312, 849 F.2d 639, 642–643 (1988) (holding, in a medical malpractice case, that "[w]here the entire relationship between the parties was centered in Maryland and the allegedly tortious conduct occurred in that state, Maryland's interest in regulating the activity must be deemed the stronger one"). We find no error.

**2.** Although follow-up medical procedures may confer some interest on a particular jurisdiction in a civil suit, under similar circumstances we have concluded that this is "an attenuated interest at best." *Drs. Groover, Christie & Merritt*, 917 A.2d at 1118.

## II

■ Appellant also contends that the trial court abused its discretion in excluding evidence of the cost of the Crystalens procedure in comparison with the costs of other available procedures. She argues that such evidence was relevant to show the defendants' "economic and entrepreneurial incentive to promote this particular procedure based on its high cost, relative to other treatments for the same condition."

The trial court has "a great deal of discretion" in "determining whether particular evidence is relevant to bias or motive." *Scott v. United States,* 953 A.2d 1082, 1091 (D.C.2008) (citation omitted). The proponent of the evidence has the burden of showing its relevance. *Id.* Furthermore, " '[a] trial judge has discretion to exclude evidence which is only slightly probative if its introduction would confuse and mislead the jury by focusing its attention on collateral issues....' " *Wood v. Neuman,* 979 A.2d 64, 73–74 (D.C.2009) (citation omitted). We review a trial court's decision to admit or exclude evidence for abuse of that broad discretion. *E.g., Ferguson v. United States,* 977 A.2d 993, 1001 (D.C.2009); *Owens–Corning Fiberglas Corp. v. Henkel,* 689 A.2d 1224, 1230 (D.C. 1997).

Appellant sought to introduce evidence that her Crystalens surgery cost $9000, whereas the usual surgery for a patient with cataracts would have cost only $800. She wanted to show that her surgery was a "big money-maker for the practice" and that it was far more lucrative for appellees than the other type of surgery. The court ruled, however, that the comparative costs of these two procedures were irrelevant because, on the facts of this case, the $800 procedure was not an option for appellant, since she did not have cataracts. As the court said to appellant's counsel, "You've acknowledged here ... that the only issue was whether to have the procedure, whatever it cost. So there's no reason to compare it to other procedures." The court concluded that such evidence would be confusing to the jury because the only choice for appellant was whether to have the Crystalens procedure or not, given that there were no other viable alternatives for her. In other words, contrary to appellant's present assertion, there were no available "other treatments for the same condition"; it was either Crystalens or nothing. The trial court decided to exclude evidence that would be only slightly probative, if at all, of Dr. Clinch's motive in counseling appellant about the risks and benefits of the Crystalens procedure. Appellees maintain that the court's ruling was well within the permissible scope of its discretion.

In arguing for reversal, appellant relies in particular on *Caulfield v. Stark,* 893 A.2d 970 (D.C.2006), and *Dorn v. McTigue,* 121 F.Supp.2d 17 (D.D.C.2000). In her view, these cases "recognize[ ] the relevance of economic incentives as [they relate] to a patient's full and informed consent...." Both cases discuss, in general terms, whether a medical malpractice claim may be subject to the District of Columbia CPPA, but a significant issue in each case was whether the alleged misrepresentation was intentional or unintentional. The court held in *Dorn* that "an unintentional misrepresentation claim would fall outside the scope of the CPPA as it applies to the medical field." 121 F.Supp.2d at 19.[3] A few years later, this

---

**3.** In a later opinion, the same court granted summary judgment for the doctor on the CPPA claim, holding that "the plaintiff has failed to make a showing sufficient to establish that the defendant's alleged statement was motivated by entrepreneurial motives."

court in *Caulfield*, noting that *Dorn* was not binding authority,[4] addressed the same issue but did not resolve it, concluding instead that "as a matter of law" the actions of the doctor-defendant "cannot be characterized as misrepresentations or omissions of material facts" which would fall under the CPPA. *Caulfield*, 893 A.2d at 979. Neither *Dorn* nor *Caulfield* holds that once a plaintiff establishes that misrepresentations were made in order to generate business, evidence of the relative cost of the procedure at issue is necessarily relevant and admissible at trial. At best, the admissibility of such evidence remains subject to the court's discretion, so that an informed decision either to admit or to exclude it would be reviewed on appeal only for abuse of discretion. Moreover, both *Caulfield* and *Dorn* dealt with claims brought under the CPPA, which we have already held is inapplicable to this case.

We are satisfied that the trial court could, and did, reasonably conclude that the proffered evidence had the potential to mislead the jury about appellant's options, and accordingly that it should not be admitted. Since the record shows that the court reached its conclusion only after careful consideration of the relevance of that evidence, we find no abuse of discretion and hence no basis for reversal.

The judgment is therefore

*Affirmed.*

Senior Judge RUIZ concurs in the judgment.

---

*Dorn v. McTigue*, 157 F.Supp.2d 37, 49 (D.D.C.2001).

4. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971).