RENDERED:  JUNE 5, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0468-MR


NICHOLAS SLOWIK AND SPRING
SLOWIK                                                                    APPELLANTS


                        APPEAL FROM KENTON CIRCUIT COURT
v.                      HONORABLE PATRICIA M. SUMME, JUDGE
                        ACTION NO. 23-CI-01374


GUARDIAN SAVINGS BANK, INC.                                   APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND MOYNAHAN,
JUDGES.

MOYNAHAN, JUDGE:  Appellants Nicholas and Spring Slowik (the "Slowiks"),

appeal from a Kenton Circuit Court order granting summary judgment to Appellee

Guardian Savings Bank, Incorporated ("Guardian").  After careful review, we

AFFIRM.

## BACKGROUND

The Slowiks set out to build a home in Kenton County in 2021. They chose Adam Miller Homes, LLC ("Miller Homes"), to construct a house in the small city of Villa Hills. The total project cost was estimated to be $576,889. The Slowiks tendered a $15,000 downpayment and contracted with Guardian to finance the remainder of the project. Under the terms of the resulting construction loan agreement, Miller Homes submitted draw requests to Guardian after key portions of the project were completed. A Guardian employee then inspected the premises to ensure the draw request was proportionate to the stage of work completed and generated a report detailing the inspection findings for Guardian's recordkeeping. Upon receiving this verification, Guardian would issue a check in the amount of the draw request. All of the checks were made out to the Slowiks who had to affirmatively sign them over to Miller Homes, before the latter could access the funds. The Slowiks chose to deal directly with their builder and did not employ a project manager, general contractor, designer, or homeowner's representative to oversee the building process.

Between June 2021 and March 2022, Guardian issued three checks, totaling approximately $484,000, to the Slowiks. Miller Homes informed the Slowiks contemporaneously with the first draw request that the project would not be completed within the original timeline. According to Mr. Slowik, the couple

was then informed of delays "constantly" throughout the project. (Trial Record ("T.R.") p. 244). Despite the delays, the Slowiks still co-signed each of the three draw checks, allowing Miller Homes full access to the proceeds as scheduled.

In May 2022, Miller Homes requested payment for multiple change orders that had accrued on the project.[1] The Slowiks expressed unwillingness to pay for the change orders due to continued project delays. Consequently, Miller Homes and the Slowiks negotiated to a lower amount that the couple personally funded and paid in June 2022. At this point approximately $78,000 remained in the Guardian construction loan account. Miller Homes offered to complete the house for the remaining undisbursed loan funds. The Slowiks declined this offer, terminated Miller Homes, and hired a different builder. Guardian disbursed the remaining money in the account to the Slowiks who paid it to their new builder. The Slowiks then sued Guardian for breach of contract and fraudulent misrepresentation.

## PROCEDURAL HISTORY

The Slowiks filed a complaint against Guardian in August of 2023. Guardian moved for summary judgment in February 2025, and a hearing on that motion was held the next month. On April 1, 2025, the Kenton Circuit Court

---

[1] Per the terms of the construction loan agreement, the Slowiks were financially responsible for all change orders.

granted summary judgment in favor of Guardian. The Slowiks timely filed a notice of appeal less than two weeks later.

**STANDARD OF REVIEW**

"The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Motorists Mutual Ins. Co. v. First Specialty Ins. Corp.*, 706 S.W.3d 120, 124 (Ky. 2024) (internal quotation marks and citations omitted). As the appropriateness of summary judgment is ultimately a legal question that involves no factual determinations, a trial court's grant of summary judgment is reviewed *de novo*. *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001). Further, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

**ANALYSIS**

**I. Noncompliant Filing**

The Slowiks' brief states that, since this case involves interpretation of a contract, "[T]here is no reason to include any legal authority in this Brief." The Kentucky Rules of Appellate Procedure ("RAP") beg to differ. Specifically,

RAP 32(A)(4) states that an Appellant's brief must contain an argument conforming to a statement of points and authorities, with ample reference to the specific location in the record and citations of authority pertinent to each issue of law. Grants or denials of summary judgment, as well as matters of contract interpretation, are questions of law subject to *de novo* review at the appellate level. *Stowe v. Realco Ltd. Liab. Co.*, 551 S.W.3d 462, 465 (Ky. App. 2018). Therefore, the Slowiks' refusal to tender legal authority is particularly striking since their entire appeal is based solely on matters of law. We note that it is not the role of the appellate court to research and construct a party's legal arguments. *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754 (Ky. App. 2005).

Despite this obvious omission, the Slowiks did cite to specific locations in the record and advanced arguments based upon those citations. Therefore, we decline to grant Guardian's request to strike the Slowiks' brief from consideration due to noncompliance. However, counsel for the Slowiks is reminded that "[f]ailing to comply with the civil rules is an unnecessary risk the appellate advocate should not chance." *Curty v. Norton Healthcare, Inc.*, 561 S.W.3d 374, 378 (Ky. App. 2018). With this preliminary matter addressed, we turn to the merits of the appeal.

## II. Breach of Contract

Three basic elements are required to support a finding of breach of contract: (1) existence of a contract, (2) breach of the contract, and (3) damages flowing from that breach. *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. App. 2007). Both parties herein agree that a valid contract existed. Therefore, our analysis turns on whether that existing contract was breached.

The Slowiks and Guardian executed three agreements to govern the terms of their contractual relationship. The first was the overall construction loan agreement ("Loan Agreement"), that established the basic financing framework for the project. The second and third agreements were Guardian's standard guidelines for construction draws ("Guidelines") and their construction inspection and disbursement procedures ("Procedures"), respectively. The Guidelines stated: "No funds will be disbursed in advance of work being completed." (T.R. p. 386). The Procedures stated: "No funds will be released prior to work being completed." (T.R. p. 221).

The dispute turns on the nature of the parties' contractual relationship and whether the Guidelines and Procedures were inherent promises that Guardian made to the Slowiks or simply procedural descriptions of the draw process. We find that they were the latter. This interpretation results from our review of the

-6-

Loan Agreement. At its core, the Loan Agreement is a straightforward contract between a for-profit financial institution that lends money in order to realize a profit and an individual borrower planning to build a house. Guardian did not gift the Slowiks money to build a house; they lent them money with an eye toward being able to mortgage the finished house and turn a profit on the transaction. Guardian and the Slowiks had a clear creditor-debtor relationship. Accordingly, the Loan Agreement was drafted to protect Guardian's financial interest in the collateral property with provisions that required the Slowiks to construct a house valued at a certain dollar amount, as well as provisions that expressly reserved Guardian's right to waive its Guidelines and Procedures at any time with or without the Slowiks' input or consent.[2] The Slowiks argue that the Guidelines and Procedures were promises to them that the project would be completed according to their expectations, but this is a mischaracterization of the nature of the parties' underlying relationship. Guardian's reassuring name notwithstanding, the Loan Agreement, as written, does not contain any discernible intent to forge a fiduciary relationship. And courts have repeatedly found that—in almost all circumstances—banks do not have fiduciary relationships with their debtors. *See, e.g.*, *Scott v. Forcht Bank*, *NA*, 521 S.W.3d 591 (Ky. App. 2017) (citing *De Jong v. Leitchfield Deposit Bank*, 254 S.W.3d 817, 822 (Ky. App. 2007)); *see also Sparks*

---

[2] *See* Loan Agreement, § 2, Paragraph 1 and Paragraph 3.

*v. Fifth Third Mortgage Company*, No. 5:17-450-KKC, 2018 WL 6424699, at *2-3 (E.D. Ky. Dec. 6, 2018) (bank administering a construction loan is not an insurer or a fiduciary of its debtor). The contractual terms here established a typical creditor-debtor relationship, and Guardian met all its contractual obligations. Therefore, there was no breach.

Finding that no breach occurred, it is unnecessary to determine whether damages ensued. However, to the extent the Slowiks allege they sustained losses, any such damages were self-inflicted. Miller Homes was willing to complete the house—at a loss—for the $78,000 remaining in the loan account and communicated their willingness to do so to the Slowiks. The Slowiks, however, refused this offer, terminated Miller Homes, and procured a new builder who, presumably, charged the full completion cost for the remaining work. Just as Guardian cannot be charged with fiduciary responsibility for the project's timeline or alignment with the Slowiks' personal preferences, it likewise cannot be charged with financial responsibility for an independent decision that compounded, rather than mitigated, the Slowiks' potential financial deficit.

## III. Fraudulent Misrepresentation

The Slowiks also assert a tort claim for fraudulent misrepresentation. A finding of fraud requires clear and convincing proof of six elements: (1) a material representation made to the plaintiff, (2) the representation was false, (3)

the declarant knew the representation was false or made it recklessly, (4) the declarant induced the plaintiff to act upon the false representation, (5) the plaintiff relied upon the misrepresentation, and (6) the misrepresentation injured the plaintiff in some way. *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544 (Ky. 2009).

The Slowiks specifically alleged that Guardian misrepresented the amount of work completed, prematurely issued draw checks based on these alleged misrepresentations, and failed to obtain required documentation before issuing checks. The evidence shows that Guardian's disbursement policy is based on completion of major project benchmarks, *i.e.*, 25% for the laying of a foundation, 25% for installation of the roof and windows, 25% for interior framing and drywall, and 25% upon final project completion. Individual line items like the hot water heater and kitchen backsplash that the Slowiks referenced, do not factor into the bank's disbursement methodology. The reports the Slowiks characterize as fraudulent representations are actually internal working documents compiled for Guardian's in-house recordkeeping. (T.R. p. 219; T.R. p. 227). Those reports were never intended to serve as a progress check or punch list for the Slowiks' personal reference. Despite some acknowledged errors in the inspection reports regarding individual components, there is no evidence that Guardian ever deviated from its established disbursement policy that ties construction draws to project

benchmarks. Nor is there any evidence that these project benchmarks had not been met when the draw checks were issued to the Slowiks.

Additionally, given their access and ability to inspect the project for themselves, the Slowiks assertion that they relied to their detriment on Guardian's representations is unavailing. The contract terms did not imbue Guardian's in-house inspection reports with an express warranty or assurance that certain project components beyond the benchmarks had been completed. Guardian's actions also in no way prohibited the Slowiks from performing their own inspections or some other level of basic due diligence during the building process. Further, it was not Guardian's responsibility to shepherd the project to completion by a certain date. The bank's role here was to disburse funds when key project benchmarks were reached in order to protect its collateral interest.

As to the Slowiks' claim that Guardian failed to procure required documentation prior to issuing draw checks, the record shows that Guardian obtained a sworn builder's affidavit from Miller Homes for each of the three checks issued as well as reviewed photographs of the site's progress taken by its own inspector. Ultimately, however, the Slowiks' fraudulent misrepresentation claim primarily fails due to their inability to identify any specific fraudulent misrepresentation. The complaint did not identify any such misrepresentation.

And, most notably, when Mr. Slowik was questioned under oath, he could not identify a single fraudulent misrepresentation put forth by Guardian. (T.R. p. 250).

Thus, the record supports the trial court's determination that Guardian made no false representations of past or present material facts to the Slowiks. Therefore, the summary judgment standard as set forth in *Steelvest* was satisfied.

## CONCLUSION

For the foregoing reasons, the Kenton Circuit Court's order granting summary judgment to Guardian is hereby AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Steven A. Taylor
Fort Mitchell, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Knecht
N. Kathleen Dudgeon
Jeffrey M. Hendricks
Fort Wright, Kentucky